UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA M. ANSELM,

                                   Plaintiff,

-vs-                                                              DECISION AND ORDER

DIAMOND PACKAGING,                                 14-CV-6388 CJS

                                   Defendant.
_____

APPEARANCES

For Plaintiff:              Lisa M. Anselm, *pro se*
                            4755 Egypt Road
                            Canandaigua, New York 14424


For Defendant:              Katherine S. McClung, Esq.
                            Bond Schoeneck & King PLLC
                            350 Linden Oaks, Suite 310
                            Rochester, New York 14625


INTRODUCTION

       This is an action alleging employment discrimination, in the form of retaliation,

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. §

2000e *et seq*..  Now before the Court is Defendant's motion (Docket No. [#3]) to dismiss

for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to

state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  The application is granted and this

action is dismissed.

BACKGROUND

       According to the Complaint [#1] in this action, on April 22, 2010, Defendant hired

Plaintiff as a Human Resources Generalist.  In or about July 2012, Defendant promoted

Plaintiff to the position of Human Resources Manager.  In or about February, 2013,

Plaintiff objected to firing certain employees because she believed that it would have been discriminatory to do so.  Plaintiff also alleged that some female employees were being paid less than males for performing the same work.  Additionally, Plaintiff questioned certain practices within the company, including accounting procedures, that she claims were illegal.  Beginning in February or March of 2013, Plaintiff claims that she experienced acts of alleged retaliation.  On April 30, 2013, Defendant terminated Plaintiff's employment.

Plaintiff subsequently filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), and on April 17, 2014, the EEOC issued her a "Right to Sue Letter."  Assuming that Plaintiff received such notice three days later, Plaintiff had 90 days, or until July 19, 2014, to commence an action in federal court.

On July 15, 2014, Plaintiff commenced this action, proceeding *pro se*.  The Court observes that its Clerk's Office has a document entitled "*Pro Se* Guidelines" which is typically given to *pro se* litigants when they commence an action, and which is also available online at the Court's public website.  Concerning service of the summons and complaint, and the time for such service, the *Pro Se* Guidelines states, in pertinent part:

> Service of process is the actual delivery of the summons and complaint to the defendant in your case.  Service of process in federal court is governed by Rule 4 of the Federal Rules of Civil Procedure. You are responsible for having a summons and a copy of the complaint "served" upon each party to the lawsuit, and for returning proof of the service to the Court. The summons and complaint must be served within **120 days** of filing the complaint or the case may be dismissed. A party who cannot complete service within **120 days must file a motion with the Clerk's Office asking the Court to extend the time to serve** the summons and complaint. *See* Motions, pp. 11-14.
>
> ***
>
> Professional process servers are listed in the telephone directory yellow pages and will serve a summons and complaint for a fee. Any other

person who is at least 18 years of age and who is not a party to the
lawsuit, such as an employee, family member or friend, may serve the
summons and complaint, but they must be careful to follow the service
procedures exactly or the case may be dismissed for improper service.

***

The procedures for serving process differ depending on whether the
defendant is an individual within the United States (including territories), in
a foreign country, under the age of 18 or incompetent, or is a corporation,
the United States (or a government agency), or a foreign, state or local
government. *See* Federal Rules of Civil Procedure, Rule 4(e) - (j). It is
important to follow the rules for service on these different persons and
entities <u>to the letter</u>.

(All emphasis in original).

After commencing the action, for almost four full months, Plaintiff apparently did

nothing.  However, on November 12, 2014, which was exactly 120 days after Plaintiff

filed the action, she attempted to serve Defendant with the Summons and Complaint.

Plaintiff did not utilize a professional process, but instead, as will be discussed further

below, she recruited her niece, Andrea Burris ("Burris"), who is employed as a nurse, to

serve Defendant by leaving an envelope containing the Summons and Complaint at

Defendant's offices.  On November 14, 2014, Plaintiff filed Burris' affidavit of service,

which states in pertinent part:  "I gave the summons in a sealed envelope marked

'confidential' to the receptionist Mary Gala." (hereinafter "Gala") (Docket No. [#2]).

On December 3, 2014, Defendant filed the subject motion [#3] to dismiss the

Complaint, on the following grounds: 1) lack of personal jurisdiction based on failure to

properly serve the Summons and Complaint; 2) statute of limitations, due to the fact

that although Plaintiff timely commenced this action within 90 days of receiving her

"Right to Sue Letter," she failed to serve Defendant within 120 days thereafter; and 3)

3

failure to state an actionable claim.[1]  In support of the Motion to Dismiss, Defendant

provided, *inter alia*, an affidavit [#3-2] from its receptionist, Gala, indicating that on the

day Plaintiff claims to have served Defendant, "a young girl entered the reception area .

. . with an envelope labeled [']Confidential[']," handed it to Gala and "asked [Gala] to

give the envelope to [Defendant's owner,] Karla Fichter," ("Fichter").  Gala indicated that

the girl did not say what was in the envelope or why she was leaving it for Fichter. Gala

further indicated that she had no authority to accept service of legal papers on behalf of

Fichter or Defendant.

    In response to Defendant's motion, Plaintiff submitted, *inter alia*, an affidavit from

Burris, her niece, disputing Gala's affidavit.  Notably, almost none of the information in

Burris' affidavit was contained in her prior affidavit of service.  Specifically, in her new

affidavit, Burris indicated that on the day she delivered the Summons and Complaint to

Defendant, November 12, 2014, she was present when Plaintiff called Defendant's

office beforehand and spoke with Gala, to ask whether Gala would accept service.

According to Burris, Gala stated that she would accept service, after which Burris and

Plaintiff drove to Defendant's office.  Burris further stated that upon entering the office,

she explained to Gala that she was there to deliver the Summons and Complaint about

which Plaintiff had called, handed the envelope containing the Summons and

Complaint to Gala, and told Gala, "You have been served."

    Thereafter, Defendant submitted reply papers including another affidavit from

Gala, disputing Burris' affidavit.  In that regard, Gala stated that she never spoke with

Plaintiff about service of process prior to receiving the envelope from Burris.  Instead,

Gala stated that Plaintiff called her only *after* Burris had delivered the envelope, and

---

[1]Defendant contends that the Complaint fails to plausibly plead either a hostile environment claim or a retaliation claim.

stated that she was "sorry to get [Gala] involved" in her dispute with Defendant.

Upon reviewing these diametrically opposed affidavits, the Court scheduled the matter for an evidentiary hearing to determine whether Plaintiff had properly served Defendant.  The Court made it clear, in that regard, that it wanted to hear testimony from both Gala and Burris.  On March 10, 2015, the day of the hearing, Plaintiff informed the Court that Burris was unavailable to testify, because she was working. Plaintiff herself testified, though, that on the morning of November 12, 2014, prior to going to Defendant's office, she used her cell phone to call Defendant's offices to see who was working at the receptionist's desk, because she had heard that Gala was only working part-time.  Plaintiff testified that Burris was with her when she placed the call, and could overhear the conversation because she was using the speaker function on her cell phone.  Plaintiff indicated that when Gala answered the phone, she told Gala that she needed to serve papers on Fichter "regarding a lawsuit against [Fichter] and [Defendant]."   According to Plaintiff, Gala indicated that she would accept the papers and put them on the desk of Fichter's assistant.  Plaintiff further testified that she was personally aware, from having worked for Defendant for three years, that Gala routinely accepted delivery of other types of legal documents for Defendant's employees, mostly employee "wage garnishments" delivered by "the marshal or the sheriff," but also "summons services."[2]  Plaintiff also testified that after speaking to Gala, she drove Burris to Defendant's offices, whereupon Burris went inside the building and delivered the envelope containing the Summons and Complaint to Gala.

The next witness at the hearing was Gala, who testified that she had worked for Defendant for twenty-six years, and was never authorized to accept service of legal papers.  Instead, she indicated that when legal papers were hand-delivered, she called

[2]*See*, Transcript, March 10, 2015, at p. 21.

5

"Christine Grady, David Rydell [or] Human Resources" to come to the reception area and accept service of the papers.  Gala further testified, consistent with her affidavit, that she had no discussion with Plaintiff prior to Burris delivering the envelope, and that she did not know that the envelope that she received from Burris contained a Summons and Complaint until later that day.

The next witness to testify was Keith Robinson ("Robinson"), Defendant's Chief Financial Officer.  Robinson indicated that the "senior management team" were the only persons employed by Defendant who were authorized to "accept service of Summons and Complaints."  Robinson further stated, on that point, that the receptionist is not authorized to accept service of "legal documents."

After hearing testimony from two additional witnesses, one of whom flatly contradicted Plaintiff's contention that wage garnishment orders are personally served by law enforcement officers,[3] the Court adjourned the hearing for essentially three purposes: 1) to allow Defendant to produce any relevant  surveillance-camera footage from the reception area; 2) to allow Plaintiff to produce her cell phone records; and 3) to allow Plaintiff to inform the Court of a date that would be convenient for Burris to testify. Subsequently, Defendant notified the Court that any surveillance-camera footage was not preserved.  Additionally, Plaintiff informed the Court that Burris would be available to testify on April 13, 2015.

On April 13, 2015, the Court took the bench expecting to continue the hearing, but Plaintiff indicated that Burris was again unavailable, due to her work schedule. More specifically, Plaintiff indicated that Burris was expecting to testify, but that at the last minute she had been required to stay at work.  Plaintiff did, however, produce her

---

[3] *See*, Hearing Transcript at p. 93: Testimony of Suzette Smith, indicating that wage garnishment orders were served on Defendant only by regular mail.

own cell phone records.  The phone records, though, showed that the only call Plaintiff made to Defendant's offices on November 12, 2014, was in the afternoon, and not in the morning as she had testified.  Whereupon, the Court indicated that proofs were closed and that it would issue a written decision and order.

## DISCUSSION

Putting aside the other aspects of Defendant's motion and focusing on the 12(b)(5) application, there are two issues before the Court:  First, whether Plaintiff has shown by a preponderance of evidence that she properly served defendant; and, second, if not, whether the Court should nevertheless, on its own motion, extend her time to effect service pursuant to Rule 4(m).  The Court answers the first question in the negative, based on its credibility findings which will be discussed below.  The Court similarly answers the second question in the negative, since it finds that an extension is not warranted.

### *Plaintiff Did Not Properly Serve Defendant*

Defendant has moved to dismiss, in part, pursuant to Rule 12(b)(5) for "insufficient service of process."  "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (*citing Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir.2005); internal quotation marks omitted).  "If service is invalid, the Court may dismiss the case or may, in its discretion, retain the case, quash service, and direct that service be effectuated properly." *M'Baye v. World Boxing Ass'n*, 429 F.Supp.2d 652, 657 (S.D.N.Y. 2006) (citations omitted); *accord*, 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.33[5] (3d ed. 2011) .

Service of process on a corporation is governed by Rule 4(h) of the Federal Rules of Civil Procedure.  Specifically, Rule 4(h)(1)(B) provides, in pertinent part, that

service may be accomplished

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]

Fed.R.Civ.P. 4(h)(1)(B) (Thomson Reuters 2015).  Additionally, Rule 4(h)(1)(A) directs that service on a corporation may also be made "in the manner prescribed by Rule 4(e)(1) for serving an individual." *Id*.  Rule 4(e)(1) states, in that regard, that an individual may be served "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Id*.  The relevant state law, New York Civil Practice Law and Rules § 311, states in pertinent part that

> [p]ersonal service upon a corporation . . .  shall be made by delivering the summons as follows: 1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.

CPLR § 311(a) (McKinney 2015).

In the instant case, Plaintiff contends that she properly served Defendant by having Burris leave the envelope with Gala, Defendant's receptionist.  On this point, as set forth above, Burris's initial affidavit of service merely indicated that she left a plain envelope marked "confidential" with Gala.  Burris' affidavit did not reference any discussion with Gala, nor did it indicate that Gala gave any indication that she was authorized to accept service.  However, in response to Defendant's motion to dismiss, Burris, in a subsequent affidavit, and Plaintiff, in her sworn testimony, contend that Gala specifically stated, prior to service, that she would accept service on behalf of Defendant.  Additionally, Plaintiff maintains that while she was employed by Defendant

she personally observed Gala accept service of legal papers in other circumstances.

However, upon considering all of the evidence, and having observed the demeanor of the witnesses who testified, the Court finds that Plaintiff's statements on those points are not credible.  For example, although Plaintiff claimed that she called Gala on the morning of November 12, 2015, and had the papers served later that day, Plaintiff's telephone records indicate that the only call she made to Defendant's office that day was in the afternoon.  Such fact is more consistent with Gala's recollection that Plaintiff only called her *after* Burris had already dropped off the papers.  Similarly, Plaintiff's testimony that she had previously witnessed Gala accepting service of legal papers was unconvincing in light of the testimony by Defendant's witnesses.  In sum, the Court makes the following factual findings: 1) Plaintiff did not speak to Gala prior to attempting service; 2) Gala did not tell Plaintiff or Burris that she had authority to accept service on behalf of Defendant; 3) Gala did not have actual authority to accept service of process for Defendant; 4) Gala did not know Burris or that Burris had any affiliation with Plaintiff; 5) Burris never told Gala that she was a process server; 6) the Summons and Complaint were in a sealed envelope that was plain, except for handwriting indicating either "Confidential" or "Karla Fichter"; and 7) Gala did not know the contents of the envelope that she accepted from Burris.

The issue therefore boils down to whether service on a corporation is proper where a person who does not identify herself as a process server merely leaves a summons and complaint in a plain sealed envelope with a receptionist who has given no indication that she is authorized to accept service on behalf of the corporation.  On somewhat similar facts, another Judge in this District recently found that service was ineffective.  Specifically, in *Lewis v. FMC Corporation*, 11-CV-877S, 2012 WL 3655327 (W.D.N.Y. Aug. 23, 2012), the Court found that service on the defendant corporation

was not effective, where a process server merely left a summons and complaint with a receptionist who had not indicated that she had authority to accept such service.  In that regard, the Court observed both that "a 'front desk' receptionist . . . generally is not a person authorized to receive service for a corporate defendant," and that the process server had no reason to believe that the defendant's receptionist was authorized to receive service of process. *Id*. at *4-5.

The instant case actually has more compelling facts favoring Defendant than in *Lewis*, since here, Burris never identified herself as a process server or gave any indication that the envelope contained legal papers.  Accordingly, the Court finds that Plaintiff failed to properly serve Defendant. *See, Amnay v. Del Labs*, 117 F.Supp.2d 283, 286 (E.D.N.Y. 2000) (Attempting service on corporation by leaving summons and complaint with receptionist not effective); *see also, DeMott v. Bacilious*, No. 11 Civ. 6966(PAE), 2012 WL 601074 at *7 (S.D.N.Y. Feb. 24, 2012) (collecting cases for proposition that merely leaving summons and complaint with someone, such as a receptionist, at a corporate business is not sufficient service on a corporation).

### The Court In Its Discretion Declines To Extend The Time For Service

Because Plaintiff failed to properly serve Defendant within 120 days, the statute of limitations on her Title VII claim has now expired, unless the Court extends her time for service *nunc pro tunc*.  On this point, Plaintiff commenced this action on the 86th day after receiving her right to sue letter, leaving four days remaining on the 90-day statute of limitations.  Thereafter, the limitations period was tolled during the 120-day period for service, but then began running again. *See, Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990) ("The 120 days runs from the filing of the complaint, and the statute of limitations for the underlying claim is tolled during that period. If service is not complete by the end of the 120 days, however, the governing statute of limitations again

10

becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period.") (citation omitted).  Therefore, the statute of limitations expired on November 16, 2014, which was 124 days after Plaintiff filed this action.  Accordingly, even if the Court were to dismiss the action without prejudice under Rule 12(b)(5), the practical effect is that the dismissal would be with prejudice.

The Court may, nevertheless, grant Plaintiff an extension of time to serve Defendant even though she has not specifically requested such relief[4] and even though she has not attempted to show good cause for her failure to properly serve Defendant. The applicable principle is set forth in Fed. R. Civ. P. 4(m), which states, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

(Westlaw 2015).  This means that a court must grant the extension if the plaintiff demonstrates good cause, but "that district courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007), cert den., 552 U.S. 1243, 128 S.Ct. 1483 (2008).

The Second Circuit has indicated that in situations where a district court's discretionary denial of an extension under Rule 4(m) effectively results in the dismissal of the action with prejudice, the Circuit Court "will not find an abuse of discretion in the procedure used by the district court, so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would

---

[4]The Court attributes this to Plaintiff's *pro se* status, and will nevertheless consider the issue *sua sponte*.

have on the parties." *Zapata*, 502 F.3d at 197.  Further, the Circuit Court has indicated that it will ordinarily not even consider vacating a Rule 4(m) dismissal for abuse of discretion unless the plaintiff-appellant "advance[d] some colorable excuse for neglect." *Zapata*, 502 F.3d at 198 (citation omitted).

Here, in deciding not to extend Plaintiff's time for service, the Court has considered "the impact that a dismissal or extension would have on the parties," as required by *Zapata*.  In that regard, the Court has of course considered that dismissal of the action will result in the end of Plaintiff's lawsuit without a determination as to the merits of her claim, which is generally disfavored.  The Court believes, though, that any such prejudice to Plaintiff is more illusory than real since her claims lack merit in any event.[5]

In that regard, Plaintiff is clearly asserting a retaliation claim under Title VII, although Defendant has suggested that she might also be attempting to assert a hostile environment claim.  To the extent that Plaintiff may be attempting to assert a hostile environment claim, the Court finds that she has not pleaded a plausible claim,[6] since although the Complaint describes a dysfunctional working environment caused by a power struggle between the two sisters who owned Defendant, it does not suggest that Plaintiff experienced a hostile work environment due to any factor protected by Title VII. As for Plaintiff's retaliation claim, she contends that she was fired, in retaliation, after she objected, in her capacity as Human Resources Director, to Defendant's plan to fire

---

[5]The Court is aware that it could conduct a separate and alternative analysis under Rule 12(b)(6), which is the alternate basis for Defendant's motion, but it chooses to include the discussion here.

[6]The standard for determining whether a plausible claim has been pleaded is well settled. *See, e.g.*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

two female employees, one because she was "old," and the other because she had "expressed" (pumped) breast milk at work, which bothered the company's female owner.  Plaintiff contends that she expressed her objections in February, 2013,[7] after which neither of the two employees was fired.  Plaintiff also maintains that, in very early April, 2013, in her capacity as Human Resources Director, she pointed out that certain "female employees [were] making less money than male employees doing the same job."[8]  Plaintiff states that in response to such statement, Defendant increased the pay of one of the female employees but not the others.[9]  Even assuming *arguendo* that Plaintiff's statements about those issues, in her capacity as Human Resources Director, amounted to protected activity under Title VII,[10] the Complaint does not plausibly suggest the necessary causal link between those statements and the termination of her

---

[7] *See*, Docket No. [#1-1] at p. 13.

[8] Complaint [#1] at p. 5.  The company was female-owned throughout the duration of Plaintiff's employment.

[9] *See*, Docket No. [#1-1] at p. 15.

[10] *See, Sarkis v. Ollie's Bargain Outlet*, No. 10–CV–6382 CJS, 2013 WL 1289411 at * 13 (W.D.N.Y. Mar. 26, 2013) ("Plaintiff did not engage in protected activity when he reported Rodriguez's complaint, since a supervisor's involvement, as part of his routine job duties, in reporting or investigating incidents of harassment between employees under his supervision does not qualify as protected activity.") (citations omitted), *aff'd*, 560 Fed.Appx. 27 (2d Cir. Mar. 20, 2014); *see also, Adams v. Northstar Location Services, LLC*, No. 09–CV–1063–JTC, 2010 WL 3911415, 4 (W.D.N.Y. Oct. 5, 2010) ("In order for the court to find that a human resources manager has engaged in protected activity, the plaintiff must allege that *she stepped outside her role of representing the company* and either filed, or threatened to file, an action adverse to the employer, actively assisted other employees in asserting Title VII rights, or otherwise engaged in activities that reasonably could be perceived as directed towards the assertion of rights.") (emphasis added, citation and internal quotation marks omitted); *but see, Hagan v. City of New York*, 39 F.Supp.3d 481, 501 (S.D.N.Y. 2014) ("Taken as a whole, these allegations suggest that Hagan was retaliated against because she advocated for systemic reform and the rights of minority employees and, in so doing, became a thorn in the side of officials who wanted to persist in unlawful discriminatory practices. This is quintessential opposition activity that goes beyond mere participation in her role as an EEO Officer.").

employment.[11]  On this point, while close temporal proximity alone may be sufficient to establish a causal nexus between protected activity and alleged retaliation, in this case, as discussed further below, there was an obvious intervening event between the aforementioned protected activity and the termination of Plaintiff's employment. *See, Nolly v. Swiss Reinsurance America Corp.*, 857 F.Supp.2d 441, 461 (S.D.N.Y. 2012) ("An intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."), *aff'd*, 523 Fed.Appx. 53 (2d Cir. Jun. 27, 2013).

Specifically, the Complaint [#1] clearly suggests that Plaintiff's firing was temporally and explicitly linked to her statements to the company's owner about alleged financial improprieties by the owner, and a subsequent conversation that she had with the owner's personal assistant in which she complained about the owner and other executives, which the assistant reported to the owner.[12]  Defendant characterized Plaintiff's conduct in that regard as "insubordination" and "breach of confidentiality." Plaintiff admits that she persisted in asserting that the alleged financial improprieties were "illegal," even after the owner held a special meeting with an attorney to relieve Plaintiff's worries.[13]  Notably, as Plaintiff also admits, Defendant terminated her employment only days after that meeting, at which time the owner referenced Plaintiff's conversation with the owner's assistant and Plaintiff's repeated suggestion of financial

---

[11]*See, Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 846 n. 5 (2d Cir. 2013) (Discussing that under the "but for" causation standard for retaliation claims set forth in *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S.Ct. 2517, 2533 (2013), the plaintiff does not have to show that a particular retaliatory motive was "the employer's *only* consideration," but must show that "the adverse employment action[ ] would not have occurred without it.") (citation omitted).

[12]*See*, Docket No. [#1-1] at p. 16.

[13]*See*, Docket No. [#1-1] at p. 16.

improprieties,  as being the reasons for terminating Plaintiff's employment.[14]   Plaintiff's allegations of financial improprieties, and her complaints to the owner's assistant about the owner, are not protected activity under Title VII.[15]

Continuing with the discussion under Rule 4(m) and *Zapata*, the Court has also considered the prejudice to Defendant if the Court were to allow the action to proceed. In this regard, the Court has considered, for example, that Defendant has already been put to the time and expense of having to needlessly produce multiple witnesses and having to appear multiple times for a hearing to dispute Plaintiff's contentions, regarding service of process, which, as discussed above, were apparently untrue at least with respect to the key issue of whether Gala ever indicated that she had authority to accept service.  On this point, not only was Plaintiff's testimony contradicted by her own phone records, but she also failed to produce her key witness, Burris, despite her repeated assurances that Burris would testify.  Frankly, the Court is deeply troubled by Plaintiff's conduct.  On the other hand, the Court has considered that Defendant suffered no prejudice from the improper service itself, since it received actual notice of the action despite the improper service.

Having weighed all of the relevant factors, the Court finds in its discretion, and despite Plaintiff's *pro se* status, that it is appropriate not to extend Plaintiff's time for service, even though such determination will effectively result in the termination of this action with prejudice.

---

[14] *See*, Docket No. [#1-1] at p. 16.

[15] For this reason the Court would alternatively grant dismissal under Rule 12(b)(6) if it were not already dismissing the action under Rule 12(b)(5).

CONCLUSION

Defendants' motion to dismiss [#3] is granted and this action is dismissed with prejudice.

SO ORDERED.

Dated:        Rochester, New York
               May 4, 2015

                                   ENTER:


                                   /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge